UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 08-343 (JNE/FLN) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| 02-Shemika Antoinette Williams, | |
| Defendants. | |

Thomas M. Hollenhorst, Assistant United States Attorney, for the Government.
Brigid E. Dowdal, for Defendant Shemika Antoinette Williams.

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 10, 2008 on Defendant's Motion to Compel Disclosure and Availability of Informants [#62] and Defendant's Motion to Suppress Evidence Obtained as a Result of an Illegal Search and Seizure [#66]. At the hearing, the Court received testimony from Officer David Garman, Sargent Randall Olson, Officer Mike Nimlos and Sargent Jeffrey Jindra. The Government submitted one exhibit, the search warrant for a residence on 27th Avenue in Minneapolis. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motions [#62 and #66] be **DENIED**.

### I. FINDINGS OF FACT

**A.    The Warrant.**

The testimony heard by the Court concerned the execution of a search warrant at a townhome on 27th Avenue in Minneapolis. The search warrant stated that a confidential reliable informant ("CRI") told the affiant, Officer Lucas Peterson, that narcotics were being sold and stored at a 27th Avenue residence. The CRI told Peterson that an individual who goes by the street name "CD" had

arrived from Chicago within the last 72 hours with a large amount of cocaine. The CRI told Peterson that he had been present at the townhome when "CD" stored the cocaine in an upstairs bedroom and when customers came to the residence and "CD" sold them small amounts of cocaine. Officer Peterson stated that he conducted surveillance of the residence with the CRI and observed a male smoking a cigarette outside the residence whom the CRI identified as "CD." During surveillance, Peterson and the CRI also observed a Chevrolet Lumina arrive at the townhome. A lone female whom the CRI identified as Shemika Williams, exited the vehicle, and went inside with "CD." The CRI told Peterson that Shemika Williams was the girlfriend of "CD." Officer Peterson stated that further investigation revealed that Shemika Williams was listed as the individual renting the townhome. The search warrant allowed law enforcement officers to search the townhome for drugs and related items.

      **B.**      **Testimony of Officer Dave Garman**.

Officer Garman testified that he has been a police officer with the City of Minneapolis for twelve years. He is currently an investigator with the metro gang strike force.

On October 22, 2008, he was assigned to assist Officer Peterson in the execution of the search warrant described above. Officer Garman's assignment was to conduct surveillance in the front of the house prior to the execution of the warrant. Officer Garman testified that he conducted surveillance from his car and was located in two different places during the course of the assignment. To begin, he was parked north of the house on 27th Street less than one block away. He later moved to a second location kitty-corner from the house because he could no longer park in the first location. He testified that he arrived around noon to begin observation and that it was raining. He testified that the informant was not present with him in the car. He testified that

between noon and 1:30 p.m., he observed through binoculars Defendant Shemika Williams exit the residence at least twice and approach two different cars that had pulled up in front of the house. He testified that he did not observe drugs changing hands between Shemika Williams and the occupants of the cars but believed he saw currency being passed from one of the cars to Shemika Williams. He testified that in his training and experience he had witnessed and participated in hundreds of hand-to-hand drug sales and that he believed that Shemika Williams was engaging in hand-to-hand transactions. At the hearing, Officer Garman positively identified Defendant Shemika Williams as the person he observed serving cars. He testified that he had not met Shemika Williams before that day but he had been given a description of her by Officer Peterson. At the times he observed Shemika Williams serve the cars, he was the only person conducting surveillance and no officers apprehended the vehicles and no evidence was found substantiating his suspicion that Ms. Williams was engaging in drug transactions.

Officer Garman also testified that he observed a Chevy Blazer pull up to the house and the two occupants exit the vehicle and enter the house. He also testified that around 1:30 p.m. he observed two individuals pull up in maroon Buick. Officer Garman radioed the car's license plate to the other officers working on the case.

Officer Garman later assisted in the search of the dwelling. He testified that he was assigned to search the east second floor bedroom and that he did not find any contraband.

### C. Testimony of Sargent Randall Olson.

Sargent Olson has been a police officer with the City of Minneapolis since 1991 and is currently working in the gang strike force unit. On October 22, 2008, he was contacted by Officer Peterson to help execute the warrant at the 27th Avenue residence. He testified that Officer Garman

was the "main eye" conducting surveillance and was communicating what he saw over the radio. Officer Garman radioed that he was observing heavy foot and vehicle traffic at the house. When Officer Garman radioed that a maroon Buick had pulled up to the house and that the occupants had entered and exited the house within five minutes, Sargent Olson testified that he, along with Officer Peterson in a separate car, followed the vehicle as it left the house. A few blocks away from the house, Officer Peterson activated the lights on his unmarked vehicle. At that point, it was raining heavily and the Buick was stuck in gridlock traffic. Sargent Olson pulled his unmarked squad alongside the Buick and Officer Peterson activated his lights behind the Buick in his unmarked squad. This configuration prevented the Buick from moving any great distance because there was stopped traffic in front of it. For a few seconds, Defendant Alexander, who was driving the Buick, attempted to maneuver the vehicle away from Sargent Olson and Officer Peterson by moving the car backwards and forwards a few feet. Sargent Olson testified that when he observed this, he exited his squad, drew his gun and stood in front of the Buick. At that point, Alexander gave up and stopped moving the car. Sargent Olson proceeded to approach the passenger side of the Buick while Officer Peterson approached the driver's side. Sargent Olson asked Defendant Simms, who was seated in the passenger seat, to step out of the vehicle and Simms did so. At that point, Sargent Olson patted Simms down for weapons and felt a bulge in Simms' sock. The bulge was a ball of crack cocaine about three fourths the size of a fist, weighing 63 grams. Officer Peterson also found drugs on Alexander. Sargent Olson testified that he knew the search warrant had been signed about 15 minutes before he made the traffic stop because an officer had announced over the nextel radios that it had been signed.

Sargent Olson testified that after he found the drugs, he brought Simms back to the

townhouse on 27th Avenue where other officers were executing the search warrant. He testified that when he returned to the townhome, he observed crack cocaine in the townhouse. He also observed that there were two women present, Defendant Shemika Williams and another woman, in addition to a small child. He testified that he did not know Shemika Williams prior to the execution of the warrant. The officers detained between 6 and 7 people, including Alexander and Simms. After the officers completed executing the warrant, they secured the house and returned the key to management. Sargent Olson testified that the search warrant return from the search of the house incorrectly listed the items seized from Defendant Simms when he and Defendant Alexander were pulled over in the maroon Buick. He testified that the items listed as number seven in the return were not recovered from inside the residence but rather at the traffic stop a few blocks from the residence.

Sargent Olson testified that after the key had been returned to management, an Officer Sidell could not find his keys and so he and Sargent Olson returned to the townhouse, obtained a key from management and looked for the officer's keys for about 15 minutes. During the search, they recovered cocaine under a keyboard in the southwest bedroom of the second floor.

Sargent Olson also testified that a black Blazer that was observed leaving the house was pulled over by an officer and no drugs were recovered from the vehicle.

    **D.**    **Testimony of Sargent Jeffrey Jindra**.

Sargent Jindra has been an officer with the Minneapolis Police Department for 13 years. He testified that he was notified of the investigation by Officer Peterson and that he was the supervisor upon entry into the townhouse. He testified that Officer Nimlos obtained a key to the townhouse from the management office and that Officer Nimlos had the warrant in hand when he took

5

possession of the key. He testified that when they entered the townhouse, he observed two women, Shemika Williams and another woman, a small child, and a number of men. He testified that the unidentified woman was not arrested.

### E.     Testimony of Officer Mike Nimlos.

Officer Nimlos testified that he was in charge of obtaining the key to the townhouse so law enforcement could smoothly execute the warrant. He testified that before he had the warrant, he went to the management office and explained that he was waiting for a warrant and that he would need the key to the townhouse once it was issued. He testified that the key was placed on the management desk and the office staff told him that he could take the key when he needed it. When the warrant was issued, Officer Nimlos returned to the management office and obtained the key.

## II. CONCLUSIONS OF LAW

### A.     Defendant's Motion to Compel Disclosure and Availability of Informants [#62] Must be Denied.

The Defendant contends that the informant's identity must be disclosed or, in the alternative, the Court should conduct an *in camera* hearing to determine whether disclosure is required.

A defendant has the right to know the identity of an informant if it is "material" to his defense. *See Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) An informant's identity is "almost always" material if the informant was an active participant in the conduct charged. *United States v. Sanchez*, 429 F.3d 753, 756 (8th Cir. 2003). In *Roviaro*, the defendant was charged with selling and transporting heroin. *Id*. at 55. The only witness to these alleged acts other than law enforcement officials was an informant. *Id*. at 64. Before trial, the trial court denied defendant's request for disclosure of the informant's identity and defendant was found guilty. *Id*. at 55. On appeal to the United States Supreme Court, the Court found that the defendant was entitled to learn the identity

of an informant because the informant was the only material witness to the crime other than law enforcement officers. *Id*. at 64. The informant was the "only witness in a position to amplify or contradict the testimony of government witnesses." *Id*.

The defendant bears the burden of demonstrating the need for disclosure of an informant's identity. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). Defendant contends that the only person who could positively identify her was the informant and that it is necessary to question the informant to determine who was serving cars. Yet, Officer Garman testified at the hearing that he observed the Defendant serving cars and he positively identified the Defendant at the hearing as the person he observed serving cars. The Court finds his testimony credible. Further, the Government represented at the hearing that it intends to use officer testimony at trial to prove that the Defendant was serving cars. The Government also represented that it will solely rely on testimony from officers at the scene to prove its case and only intends to prove those facts the officers observed. It will not offer at trial any of the facts provided by the informant upon which the search warrant was issued..

The Defendant makes much of the fact that the informant told law enforcement officers that the Defendant was Floyd Williams' girlfriend when she is in fact his sister. This fact is irrelevant to whether or not the identity of the informant should be disclosed. The Defendant also argues that the informant should be disclosed because there was another African American woman who was the same age and the same build as the Defendant present at the townhouse when the warrant was executed. As the Government plans to rely on the observations of officers at the scene to prove its case, there is nothing about the presence of the second woman in the townhouse that would compel the disclosure of the informant's identity.

Defendant also cites to *United States v. Lapsley*, 263 F.3d 839, 843 (8th Cir. 2001) in support of her position. In *Lapsley*, the government had to prove that the defendant knowingly possessed a firearm that was found in his apartment. The Defendant alleged that his girlfriend's son hid the gun in the apartment without his knowledge. The son claimed that the gun was not his. The confidential reliable informant (CRI) in the case allegedly saw the son with the gun prior to the execution of the warrant. The defendant contended that the CRI might know whether the son and his associates had used the gun in the past and, consequently, whether the defendant knowingly possessed the firearm. The court remanded the case to the district court and ordered an *in camera* review of the CRI's testimony to determine whether the CRI had any information about who possessed the gun. The court reasoned that such a review would balance the government's interest in protecting the informant's identity against the defendant's interest in a fair trial.

*Lapsley* is unhelpful in this case because the Government does not plan to prove at trial any facts to which the informant was a witness. The Government rather represented that it intends to present a police witness who observed the Defendant "serving" customers outside the 27th Street residence and several police witnesses who saw the Defendant in the house upon the execution of the search warrant. There is no evidence that the informant's information would have any bearing on the testimony of these witnesses.

B.    **Defendant's Motion to Suppress Evidence Obtained as a Result of an Illegal Search and Seizure [#66].**

The Defendant contends that the evidence obtained during the search of the house must be suppressed for two reasons: (1) because two officers re-entered the townhome after the search warrant had been executed and seized evidence; and (2) because the key to the townhouse was obtained before the warrant was issued.

In regard to the first argument, Sargent Randall Olson testified that after they completed executing the search warrant, Officer Sidell could not find his keys and so he and Sargent Olson re-entered the house about one half hour later to look for the keys. Sargent Olson testified that he and Officer Sidell searched for the keys in the house for about fifteen minutes and, in the process, found cocaine hidden under a keyboard in the southwest bedroom of the second floor. At the hearing, the government represented that it will not present this evidence in its case-in-chief. In light of the Government's representation, the Court need not decide whether the re-entry compels the suppression of the drugs found after the police re-entered the home. This aspect of the motion should be denied as moot.

As to the second argument Officer Nimlos' testimony refutes Defendant's contention that the key was obtained before the warrant was issued. Officer Nimlos testified that he informed staff in the management office prior to having the search warrant that he would need the key to the townhome. He testified that he did not however take possession of the key until he had the warrant. Defendant cited to no cases and the Court is aware of none standing for the proposition that a search warrant must be issued before law enforcement officers may communicate with a management office about the possibility that they will need a key in the near future.

### III. ORDER AND RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Disclosure and Availability of Informants [#62] is **DENIED.**

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of an Illegal Search and Seizure [#66] be **DENIED**.

DATED: January 8, 2009                              *s/ Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 28, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 28, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.